[Cite as *State v. Akhtar*, 2016-Ohio-988.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

MUHAMMAD AKHTAR,

    DEFENDANT-APPELLANT.

CASE NO. 2-15-16

O P I N I O N

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2014-CR-134

**Judgment Affirmed**

**Date of Decision:  March 14, 2016**

APPEARANCES:

    *Todd W. Barstow* for Appellant

    *R. Andrew Augsburger* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Muhammad Akhtar ("Akhtar") brings this appeal from the judgment of the Court of Common Pleas of Auglaize County finding him guilty of OVI and sentencing him to community control. Akhtar claims that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Akhtar also claims that he was denied the effective assistance of counsel. For the reasons set forth below, the judgment is affirmed.

{¶2} On August 7, 2014, the Grand Jury for Auglaize County indicted Akhtar on one count of OVI in violation of R.C. 4511.19(A)(1)(a)(G)(1)(d), a felony of the fourth degree. Doc. 1. The indictment indicated that within the prior six years of the current offense, Akhtar had been convicted or pled guilty to three or more OVI offenses. *Id.* Akhtar then hired private counsel to represent him. Doc. 10, 20. However, on October 16, 2014, Akhtar replaced his attorney with a new attorney. Doc. 33, 34. Both attorneys engaged in discovery. See Doc. 21, 36. On January 27, 2015, Akhtar filed a motion through counsel to continue the jury trial to investigate the constitutionality of his prior OVI convictions. Doc. 53. The trial court granted the motion to continue. Doc. 55.

{¶3} After waiving his request for a jury trial, a bench trial was held on August 24, 2015. Doc. 121. The State presented the testimony of one witness. Patrolman Brian Christopher ("Christopher") of the St. Marys Police Department testified that on July 25, 2014, he was patrolling the area across from a Sunoco gas

station in St. Marys. Tr. 15-16. Christopher stated that he went to that area after dispatch received two different calls claiming that an employee at the station was "acting odd." Tr. 17. Christopher then saw a car with Michigan plates leave the station and chose to follow it. Tr. 18. The driver was subsequently identified as Akhtar. Tr. 32. While following the vehicle, Christopher observed several different marked lane violations and that the driver was driving very slow for the area. Tr. 18. Christopher then stopped the vehicle due to the traffic violations. Tr. 19. When Christopher arrived at the driver's side door, he noted "a strong odor of an alcoholic beverage" coming from the vehicle. Tr. 19. Christopher also noted that Akhtar's movements were very slow and uncoordinated. Tr. 20. The speech of Akhtar was slow and slurred. Tr. 20. Christopher then asked Akhtar to exit the vehicle and observed a bottle of alcohol sitting by the seat. Tr. 20.

{¶4} Once Akhtar exited the vehicle, he was unstable and had a difficult time maintaining his balance. Tr. 21. Christopher then asked Akhtar to perform the field sobriety tests. Tr. 21. While attempted to complete the horizontal gaze nystagmus test, Akhtar was "swaying back and forth, having a hard time standing in upright, - the upright position." Tr. 21. Christopher could not complete the test because Akhtar was too unstable and fell forward causing Christopher to have to catch him. Tr. 22. Christopher did not even have Akhtar attempt the walking test because Akhtar "bent down and almost fell onto his face." Tr. 22-23. Christopher

testified that in his opinion, based upon his experience as a police officer, Akhtar was severely under the influence of alcohol. Doc. 23.

{¶5} Christopher then played a video of the stop taken from the dashcam of the patrol car. The video shows the car in front of the officer crossing the centerline of the road multiple times. Ex. 1. When asked his address, Akhtar appeared to have difficulty providing that information to Christopher. *Id*. Upon exiting the vehicle, Akhtar stated that he had drunk one beer. *Id*. While preparing to take the sobriety tests, Akhtar was stumbling around and appeared to be unable to stand stationary. *Id*. The video shows that while performing the test, Akhtar was swaying and eventually started to fall. *Id*. Akhtar then admitted that he had drunk two 24 oz. beers recently. *Id*. After the video, Christopher testified that Akhtar should not have been operating a vehicle in the condition he was in and that Akhtar was under the influence of alcohol at the time he was driving the vehicle. Tr. 33.

{¶6} After Christopher testified, the video was admitted without objection. Tr. 37. The State then moved to have Exhibits two, three, four, and five, which were certified copies of government records, admitted. Tr. 37. Akhtar objected on the grounds that "there was no way to identify whether constitutional rights have been violated" in the cases from which the convictions stemmed. Tr. 38. State's Exhibit 2 was a certified copy of an OVI conviction on December 7, 2009, in Zanesville Municipal Court after Akhtar entered a guilty plea. Ex. 2. State's

Exhibit 3 was a certified copy of an OVI conviction on April 22, 2011, in the Muskingum County Court after Akhtar entered a plea of no contest. Ex. 3. State's Exhibit 4 was a certified copy of an OVI conviction on April 24, 2013, in the Zanesville Municipal Court after Akhtar entered a no-contest plea. Ex. 4. State's Exhibit 5 was a record request certification provided by the Ohio Bureau of Motor Vehicles. Ex. 5. The trial court overruled the objections and admitted the exhibits. Tr. 42. The State then rested its case. Tr. 42.

{¶7} Akhtar then testified on his own behalf. Akhtar testified that for his first offense, he was taken to the court and told he would serve six days in jail and pay the fine without any discussion about the charges, penalties, or representation. Tr. 45-46. Akhtar also indicated that at the time of the hearing, he was still under the influence of alcohol. Tr. 46. According to Akhtar, he did not recall everything that happened because he was still intoxicated. Tr. 48.

{¶8} As to the second offense, Akhtar testified that he was not sure if he had counsel representing him on the OVI charge. Tr. 50. The second charge occurred after he was injured in an accident and he was taken to the hospital where a blood test was done while he was unconscious. Tr. 51. When he changed his plea to one of no contest, he did sign a waiver of his constitutional rights. Tr. 53.

{¶9} For the third offense, Akhtar claimed that he was walking out of his store in Zanesville when someone yelled at him that he had struck their car in the parking lot. Tr. 56. Akhtar testified that he had not been in the car at all, but that

he was arrested because the car was half way out of the parking spot. Tr. 56-57. Akhtar testified that his ex-wife had a key to the car and must have moved it. Tr. 58-59. Akhtar admitted that he had been drinking when he was arrested, but denied being in the vehicle. Tr. 60. Counsel was provided for Akhtar for this offense. Tr. 61-62. Akhtar claimed that he only saw counsel three times and that counsel advised him to enter a plea of no contest even though he knew that the witnesses for the State were not going to be present to testify. 67. Akhtar denied that anyone told him what the consequences of the conviction would be, instead just telling him he would serve 20 days in jail and that would be it. Tr. 67. Following cross-examination, Akhtar rested his case. Tr. 86.

{¶10} The trial court determined that since Akhtar was challenging the constitutionality of his prior convictions, they could be raised collaterally in this case. Tr. 103. The trial court then reached the following conclusions regarding the prior convictions.

> **[B]ased on the record and based upon the testimony, [Akhtar] either waived his right to counsel or he had counsel in each of the three (3) underlying convictions. No question that it was him, no question that he, in fact, was found guilty, no question to the fact he was sentenced, and no question, in fact, that he either waived right to counsel or was represented by counsel.**

Tr. 103. The trial court then found Akhtar guilty as charged in the indictment. On October 16, 2015, a sentencing hearing was held. Doc. 97. The trial court ordered that Akhtar be sentenced to five years of community control sanctions, which

included 180 days in the Auglaize County Correctional Center. *Id.* Akhtar filed a notice of appeal from the trial court's judgment. Doc. 110. On appeal, Akhtar raises the following assignments of error.

### First Assignment of Error

**[Akhtar's] trial counsel was ineffective, thereby denying him his right to effective assistance of counsel as guaranteed by the United States and Ohio Constitutions.**

### Second Assignment of Error

**The trial court erred and deprived [Akhtar] of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of OVI as a felony of the fourth degree as that verdict was not supported by sufficient evidence and was also against the manifest weight of the evidence.**

*Ineffective Assistance of Counsel*

{¶11} Akhtar claims in the first assignment of error that he was denied the effective assistance of counsel.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."** *State v. Hester* **(1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."** *State v. Lytle* **(1976), 48 Ohio St.2d 391, 396–397,**

> **2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; *State v. Jackson*, 64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999–Ohio–102, 714 N .E.2d 905.

{¶12} Here, Akhtar claims that counsel was ineffective for 1) failing to file motions to suppress or motions in limine regarding the prior convictions and 2) for having a poor trial strategy regarding the prior convictions. A review of the record indicates that trial counsel for Akhtar did not act deficiently as claimed on appeal. Although counsel did not file a motion to suppress the prior convictions, counsel objected to their admission at trial. Tr. 38. The very reasons that Akhtar claims may have led to the suppression of the convictions were argued in front of the trial court and overruled. Additionally, trial counsel requested and obtained a continuance to investigate the circumstances of the prior convictions, and steps were taken, though unsuccessfully, to have those convictions vacated. At trial the convictions were challenged not only on their facts, but on potential constitutional issues. The trial court in this case addressed these very issues. Contrary to the position taken by Akhtar in his appellate brief, evidence was presented that Akhtar had been offered counsel and had either accepted counsel or waived it prior to each of the convictions in question. The trial court determined that the pleas and

the subsequent convictions were properly taken. Although Akhtar claims that trial counsel erred by not submitting transcripts of the plea hearings, this was not an error of counsel. Counsel addressed this issue to the trial court at the trial and indicated that no transcripts were available from the prior hearings. Tr. 105-106. Thus, no trial counsel would have been capable of providing the transcripts of the prior hearings. Finally, Akhtar has presented no argument that any of the alleged errors would have affected the outcome of the trial.[1] The first assignment of error is overruled.

*Sufficiency of the Evidence*

{¶13} One of the allegations raised in the second assignment of error is that the conviction was not supported by sufficient evidence. When reviewing a question of sufficiency of the evidence, an appellate court determines whether, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crime charged proven beyond a reasonable doubt. *State v. Blanton*, 3d Dist. Marion No. 9-15-07, 2015-Ohio-4620. In this case, Akhtar was charged with a violation of R.C. 4511.19(A)(1)(a)(G)(1)(d). The State was required to prove that Akhtar operated a vehicle in Ohio while under the influence of alcohol. R.C. 4511.19(A)(1)(a).

---

[1] Although Akhtar also claims that trial counsel was ineffective for filing a motion to have Akhtar screened for intervention in lieu of conviction after the trial, this motion had no effect on the trial or the conviction. The motion was based upon a desire to withdraw a guilty plea, which did not occur in this case as Akhtar pled not guilty and was found guilty after a trial. The motion was denied. Akhtar points to nothing in the record that would show that the filing of this motion affected the case in any manner.

Additionally, the State had to prove that within the six years prior to the offense, Akhtar had been convicted of or pled guilty to three or four OVIs or equivalent offenses. R.C. 4511.19(G)(1)(d).

**{¶14}** A review of the record shows that Christopher testified that he observed Akhtar driving his vehicle on a road in Ohio, that Akhtar was weaving within his own lane and had crossed the centerline multiple times. When Christopher stopped Akhtar, he smelled a strong odor of an alcoholic beverage emanating from the car. Akhtar had slow responses, was slurring his words, and was barely able to remain standing. According to Christopher, Akhtar appeared to be so intoxicated that it was not possible for him to complete the field sobriety tests. The video of the vehicle moving and the subsequent stop confirms the testimony of Christopher. Additionally, Akhtar admits on the video that he had recently consumed 48 oz. of beer prior to driving. At no point does Akhtar deny that he was driving the vehicle while under the influence of alcohol. Evidence was presented through State's Exhibits two, three, and four that indicate that within the six years prior to the instant offense, Akhtar was convicted of three other OVI offenses. Akhtar did not deny that these convictions occurred, though he challenged the constitutionality of the convictions. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support the conviction.

*Manifest Weight of the Evidence*

**{¶15}** The second claim made in the second assignment of error is that the conviction was against the manifest weight of the evidence.[2]  Unlike sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution.

> **Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."**

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) (citing Black's Law Dictionary (6 Ed.1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the fact-finder.

> **The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

---

[2] As these were two separate arguments, they should have been addressed in two separate assignments of error.

*State v. Thompson*, 127 Ohio App.3d 511, 529, 713 N.E.2d 456 (8th Dist. 1998).

{¶16} In this case, the evidence clearly shows that Akhtar was under the influence of alcohol while operating the vehicle. The evidence also shows that he had been previously convicted of three prior OVIs within the six years before the instant offense. The evidence presented to the court shows that at the time of the prior convictions, Akhtar was either represented by counsel or had waived the right to counsel. The evidence does not weigh heavily against conviction. Thus, a new trial is not necessary. The second assignment of error is overruled.

{¶17} Having found no error in the particulars assigned or argued, the judgment of the Court of Common Pleas of Auglaize County is affirmed.

***Judgment Affirmed***

**SHAW, P.J. Concur.**

**ROGERS, J., Concurs in Judgment Only.**

**/hls**